UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
                                    )
ENKA İNŞAAT VE SANAYI A.Ş.,         )
Balmumcu Mahallesi                  )
Zincirlikuyu Yolu No. 10            )
ENKA Binasi                         )
TR-34349 Beşiktaş. Istanbul         )
Turkey                              )
                                    )
                *Petitioner*,       )   Case No. _____
                                    )
        v.                          )
                                    )
THE GABONESE REPUBLIC,              )
Ministry of Foreign Affairs         )
Boulevard du Bord de Mer B.P.       )
Libreville                          )
Gabon                               )
                                    )
L'AGENCE NATIONALE DES              )
GRANDS TRAVAUX,                     )
Immeuble du Bord de Mer             )
Boulevard de l'Indépendance         )
BP 23765                            )
Libreville                          )
Gabon                               )
                                    )
                *Respondents*.      )
_____)

**PETITION TO CONFIRM ARBITRATION AWARD**

Petitioner Enka İnşaat ve Sanayi A.Ş. ("**ENKA**" or "**Petitioner**") by and through its attorneys, Shearman & Sterling LLP, states as follows:

**I.     NATURE OF THE PROCEEDING**

1.     ENKA seeks confirmation of a foreign arbitral award (the "**Award**") rendered on September 14, 2018 by a distinguished three-member Tribunal sitting in Geneva, Switzerland under the auspices of the International Court of Arbitration of the International Chamber of

1

Commerce.[1] The Tribunal unanimously found the Respondents to be in breach of their contractual obligations to ENKA. (Ryan Decl. ¶ 3, Ex. A (the Award) ¶¶ 397-402.) According to the Tribunal, these breaches harmed ENKA and supported an award of damages. (Award ¶ 477.) To date, those damages have not been paid. In addition, the Tribunal unanimously ordered the Gabonese Republic to indemnify ENKA in the event ENKA is required to pay certain social security contributions for work performed in country. (Award ¶ 367.)

2. The Award is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "**New York Convention**"). Under applicable law, a district court "shall confirm" an award falling under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. There are no such grounds for refusal or deferral of recognition here. The Court, therefore, should confirm the Award.

## II. PARTIES, JURISDICTION AND VENUE

3. Petitioner ENKA is a global engineering, construction, power generation, real estate, and materials trading conglomerate headquartered in and incorporated under the laws of Turkey. Its headquarters and principal place of business are located at Balmumcu Mahallesi, Zincirlikuyu Yolu, No. 10, ENKA Binasi, 34349, Beşiktaş-Istanbul. ENKA's shares are publicly traded on the Borsa Istanbul stock exchange under the symbol IST: ENKAI. (Award ¶ 131.)

4. Respondent the Gabonese Republic is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act (the "**FSIA**"), 28 U.S.C. § 1603(a) and was a respondent in the underlying arbitration. (Award ¶ 132.)

---

[1] *See* Declaration of Christopher Ryan, dated October 25, 2018 ("**Ryan Decl.**") ¶ 3, Ex. A., *ENKA İnşaat ve Sanayi A.Ş. v. La Republique Gabonaise and l'Agence Nationale Des Grands Travaux*, Case No. Arbitration CCI No. 22841/DDA (the "**Award**").

5.      Respondent l'Agence Nationale Des Grands Travaux ("**ANGT**") is a government agency of the Gabonese Republic created in 2010 under the supervision of the Presidency and the Ministries of Gabon.  It does not have a separate legal personhood.  (Award ¶ 132.) Collectively, the Gabonese Republic and ANGT are referred to as the "**Respondents**."

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1330(a) and, as a case arising under the New York Convention, 9 U.S.C. § 203.

7.      The Respondents are not immune from the jurisdiction of this Court under at least two sovereign immunity exceptions.  *First*, this action seeks confirmation of an award that is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," *i.e.*, the New York Convention.  28 U.S.C. § 1605(a)(6).  *Second*, the Respondents signed agreements to arbitrate the dispute that gave rise to the Award and, as such, waived any claim to immunity in actions brought to enforce the Award.  28 U.S.C. § 1605(a)(1).

8.      This Court has personal jurisdiction over the Respondents pursuant to 28 U.S.C. § 1330(b).

9.      Venue is proper in this District under 28 U.S.C. § 1391(f)(4).

10.     This petition was timely filed in accordance with 9 U.S.C. § 207.

### III.    FACTUAL BACKGROUND

#### A.    THE EVENTS GIVING RISE TO THE DISPUTE

11.     The Award is the result of the Respondents' failure to pay more than US$ 46 million owed to ENKA.  Between March 13, 2013 and June 4, 2013, ENKA and the Respondents entered into three contracts for ENKA to construct a Presidential Palace, a museum, conference center, and other structures in Gabon (together, the "**Construction Agreements**").  (Award ¶

134); (*see* Ryan Decl. ¶ 4, Ex. B (Memorandum of Understanding on the Termination of Contracts dated December 17, 2015 (the "**Memorandum of Understanding**")) at 3-5.)) ENKA performed its obligations under the Construction Agreements. The Respondents defaulted on their payment obligations. The Respondents never denied that they had breached the Constructions Agreements. Rather, they explained that they were unable to make the delinquent payments "due to the financial difficulties of the Gabonese State." (Memorandum of Understanding at 2.)

12. On December 17, 2015, ENKA and the Respondents entered into the Memorandum of Understanding in an effort to resolve the outstanding payments and other disputes relating to the Construction Agreements. (Award ¶ 134-36.) The Memorandum of Understanding was executed by the Director General of l'Agence Nationale des Grands Travaux (Emmanuelle Mattei) and the Minister of Sustainable Development, Economy, Investments and Prospective (Régis Immongault) on behalf of the Gabonese Republic. (Memorandum of Understanding at 19.)

13. Under the Memorandum of Understanding, ENKA agreed to terminate the Construction Agreements and, in exchange, the Respondents agreed, among other terms, to pay ENKA in installments a "final lump sum of USD 46,010,804" and indemnify ENKA for certain tax liability. (Award ¶¶ 134-144.) The Gabonese Republic subsequently made scheduled payment of US $7,800,000. It, however, defaulted on all further payments. (Award ¶ 171.)

14. Article 4.3 of the Memorandum of Understanding provides that if the Respondents fail to perform their payment or other obligations under the Memorandum of Understanding, ENKA "will be entitled to demand the amount of $47,643,209 (Forty-seven million six hundred and forty-three thousand two hundred and nine US dollars) plus interest

[which is addressed elsewhere in the Memorandum of Understanding]" plus "the full amount of the Steel Payments[.]"  (Award ¶¶ 142-44.)  The Arbitral Tribunal examined whether ENKA could make this demand solely of the Gabonese Republic or whether it could also demand payment from ANGT.  (Award ¶¶ 219-223.)  It noted that ENKA argued that both Respondents were liable for payment under the Memorandum of Understanding and that neither the Gabonese Republic nor ANGT objected to this position.  (Award ¶¶ 220-221.)  Ultimately, the Arbitral Tribunal determined that both the Gabonese Republic and the ANGT were jointly and severally liable to pay the amounts specified in the Memorandum of Understanding.  (Award ¶ 223.)

### B. THE ARBITRATION AGREEMENT

15. The Memorandum of Understanding provides that any disputes between the parties "arising out of or in connection with" that agreement shall be submitted to and finally resolved by arbitration under the rules of the International Chamber of Commerce.  To this end, Article 20 of the Memorandum of Understanding states:

> **ARTICLE 20.  SETTLEMENT OF DISPUTES**
>
> **20.1**   All disputes arising out of or in connection with this Memorandum of Agreement, including any question regarding its existence, validity or termination (the "Dispute"), shall be addressed in the manner specified in Article 20.2 of the Contracts (Senior Representative Negotiation).
>
> **20.2**   If the Parties cannot resolve the Dispute within 28 calendar days of the request for negotiation being made, or such other period of time reached via mutual agreement by the Parties in writing, then any Party may refer the Dispute to Arbitration as set out below.
>
> All disputes arising out of or in connection with this Memorandum of Agreement, including any question regarding its existence, validity or termination, shall be submitted and finally resolved by arbitration under the rules of arbitration of the International Chamber of Commerce (the "Rules") by three (3) arbitrators appointed in accordance with these Rules.
>
> The Arbitration shall be conducted in the French Language.
>
> The seat of the Arbitration shall be in Geneva, Switzerland.

5

> No Party shall be entitled to interim relief other than in accordance with the decision of the arbitral tribunal appointed in accordance with this Memorandum of Agreement.

(Memorandum of Understanding, Article 20.2.)

### C. THE ARBITRATION

16. On November 2, 2016, ENKA notified the Respondents of a dispute and, pursuant to Article 20.1 of the Memorandum of Understanding, requested negotiations in an attempt to reach an amicable settlement. The parties were not able to resolve the dispute within the 28-day period specified in the Memorandum of Understanding. (Award ¶ 159.) Consequently, on May 24, 2017, ENKA filed a Request for Arbitration with the ICC pursuant to Section 20.2 of the Memorandum of Understanding. (Award ¶ 7.)

17. In its Request for Arbitration, ENKA asked the Tribunal to enter an award ordering the Respondents: (1) to pay ENKA US $44,550,752 plus interest; (2) to indemnify ENKA for any tax liabilities that may arise in Gabon resulting from the Construction Agreements or the Memorandum of Understanding; (3) to take possession of steel warehoused by ENKA on behalf of Gabon; (4) to repay ENKA for past costs to warehouse the materials; and (5) to pay ENKA's reasonable costs and fees in the arbitration, in addition to other relief. (Award ¶ 103.) The Respondents submitted a Response to the Request for Arbitration dated July 24, 2017. (Award ¶¶ 18, 109.)

18. The Tribunal was constituted on October 26, 2017, in accordance with the rules of the ICC and the procedure set out in the Memorandum of Understanding. (Award ¶¶ 29-30.) The Respondents together nominated one co-arbitrator. (Award ¶¶ 14-16.) ENKA similarly nominated a co-arbitrator. (Award ¶ 11.) The two co-arbitrators jointly nominated a President of the Tribunal. (Award ¶ 29.) Pursuant to a timetable established by the Tribunal, the parties exchanged evidence and made written submissions. (Award ¶¶ 53, 56, 61, 64, 72, 77, 86.) Both

ENKA and the Respondents were represented by counsel throughout the arbitration. (Award ¶¶ 2, 4, 13.) In accordance with the Memorandum of Understanding, the seat of the arbitration was Geneva, Switzerland, and the arbitration was conducted in French under French law. (Award ¶¶ 125-129, 198.)

19.     The Respondents, through their appointed counsel, fully participated in the arbitration. At no time did the Respondents challenge the jurisdiction of the Tribunal or deny that they were bound by the Memorandum of Understanding (and, therefore, by the arbitration clause contained therein). (Award ¶¶ 128-29.) In addition, the Respondents "at no time contested" that they failed to make the requisite payments under the Memorandum of Understanding or the "contractual basis for" ENKA's claims. (Award ¶ 209.)

    **D.**    **THE AWARD**

20.     On September 14, 2018, following multiple rounds of written submissions, the Tribunal rendered a one hundred and nine (109) page Award. Originals of the Award were delivered to the parties the next day in accordance with the ICC Rules. As noted above, the Tribunal unanimously found that the Respondents breached their contractual obligations under the Memorandum of Understanding and awarded ENKA the following money damages (in addition to other relief):

    a. US $44,550,752 plus statutory interest thereon from May 25, 2017, calculated in accordance with French law (Award ¶ 477(b));

    b. €450,000 plus statutory interest thereon from January 31, 2018, calculated in accordance with French law (Award ¶ 477(g));

    c. €175,000 (as of August 2018) plus €25,000 each additional month for a defined period of time thereafter (Award ¶ 477(h)); and

    d. US $1,036,082.86 in arbitration costs (Award ¶ 477(e)).

The total of these sums inclusive of pre-judgment interest as of October 25, 2018 converted to US Dollars is US$ 46,912,875.86.[2] The Respondents have not applied to have the Award set aside in Switzerland, the seat of arbitration.

21.  To date, the Respondents have not paid any amount due under the Award.[3] On September 18, 2018, four days after the Award was issued, ENKA sent the Respondents a letter demanding payment of all sums due by 18:00 (CET) on Friday, September 21, 2018, and stated that if the Respondents failed to make payment by that time, ENKA would take steps to enforce its legal rights under the Award.  (Ryan Decl., Ex. E.)  The Respondents did not respond to ENKA's letter and failed to make payment by the stated deadline.  On October 18, 2018, ENKA sent a second letter to the Respondents requesting that all sums owed under the Award be paid by no later than 18:00 (CET) on Thursday, October 25, 2018.  (Ryan Decl., Ex. F.)  On October 24, 2018, the Respondents sent an email affirming their debt to ENKA.  They further noted that they would attempt to secure approximately 19 million euros by the end of 2018 to "cover the debt."  ENKA acknowledged the Respondents' confirmation of their debt, but declined to accept a reduced amount in satisfaction of the Award.

---

2     The amounts awarded in Euros have been converted to USD at the 0.8580 exchange rate published by the U.S. Treasury Department as of June 30, 2018.  (Ryan Decl. ¶ 9, Ex. G.)  The pre-judgment interest calculation is set forth in the accompanying Declaration of Emmanuel Kaspereit dated October 23, 2018 ("**Kaspereit Decl.**") ¶¶ 3-8, Exs. A-D.

3     On July 19, 2018, before the Award was handed down, the Respondents wrote a letter to ENKA stating that "the Gabonese State owes your company the sum of USD 21,400,000.00" (an amount substantially less than the sum sought in the arbitration and later awarded) and that "[w]e therefore undertake to pay the accumulated arrears to your company by the end of 2018."  (Ryan Decl., Ex. C.)  ENKA responded in a letter dated July 24, 2018, that it did not "accept [Gabon's] right to unilaterally revise your payment obligations to us nor your assessment of the debt owing to ENKA."  (Ryan Decl., Ex. D.)  In any event, the Respondents have not made any payment to ENKA following the July 19, 2018 letter.

## IV.   LEGAL STANDARDS

22.   The Award is subject to the New York Convention, which applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, Art. I(1); *see also* 9 U.S.C. § 201 ("The [New York Convention] shall be enforced in United States courts in accordance with this chapter.").

23.   "Confirmation proceedings under the Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011); *see also* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). Those defects are limited in nature and apply only where:

- the arbitration agreement is invalid;
- the award resolves a type of dispute that the parties did not agree to arbitrate;
- the award resolves a type of dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- the arbitration used procedures (including for the composition of the tribunal) that are inconsistent with the parties' arbitration agreement;
- the award is not yet binding on the parties or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or
- confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention, Art. V.

24. The D.C. Circuit has held that, in enforcement actions brought under the New York Convention, "'[t]he showing required to avoid summary confirmation is high' and the burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation." *Int'l Trading Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (citation omitted); *Sterling Merchant Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017) ("The party resisting confirmation 'bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies.'") (citation omitted).

25. The Award meticulously details the well-reasoned and unanimous decision of the arbitral tribunal. It thoroughly sets out the arbitration's procedural history, including details of the notice provided by ENKA of the arbitration and the Respondents' participation the proceedings (Award ¶¶ 7-100), the claims and submissions of the parties (Award ¶¶ 101-122), the jurisdictional foundation for the arbitration (Award ¶¶ 123-129), essential facts (*see id.* ¶¶ 130-196), applicable law on the merits (Award ¶¶ 197-198), and the tribunal's decisions on the parties' claims, including the quantification of damages and arbitration costs (Award ¶¶ 199-476).

26. The Tribunal decided four substantive claims: (a) ENKA's claim for payment under the Memorandum of Understanding (Award ¶¶ 209-225); (b) ENKA's tax obligations arising out of the Memorandum of Understanding (Award ¶¶ 313-333); (c) whether ENKA was subject to social security obligations arising out of the Memorandum of Understanding (Award ¶¶ 347-371); and (d) ENKA's entitlement to costs for certain steel structures purchased on behalf of the Respondents for the projects that were terminated (Award ¶¶ 382-393). In addition, at ENKA's request, the Tribunal issued a declaratory statement that the Respondents are "in breach

of their contractual obligations arising out of the Memorandum of Understanding." (Award ¶ 397.) The Tribunal also awarded ENKA USD 1,036,082.86 in arbitration costs. (Award ¶ 477(e).)

### A. ENKA'S CLAIM FOR PAYMENT UNDER THE MEMORANDUM OF UNDERSTANDING

27. The Memorandum of Understanding specified the Respondents' precise payment obligations to ENKA. The Respondents failed to meet those obligations and, as such, ENKA asked the Tribunal to award it all amounts outstanding under the Memorandum of Understanding. (Award ¶¶ 201-206.)

28. The Tribunal found that ENKA's "claim for payment is soundly based on the Memorandum of Understanding, in particular its Article 4.3, which sets out the rule according to which ENKA may demand the payment of a predefined amount if the Gabonese Republic is unable to comply with any of its payment obligations relating to the Settlement Amount pursuant to the Memorandum of Understanding." (Award ¶ 210.) The Tribunal further found that it "is not disputed that the Gabonese Republic did not honour all of its debt in accordance with the Memorandum of Understanding" and "explicitly acknowledged its payment arrears." (Award ¶ 211.) The Tribunal rejected the Respondents' defense that any payment obligations under the Memorandum of Understanding should be excused due to unforeseeable circumstances affecting the country's economy. (Award ¶¶ 258-273.) The Respondents' argument was predicated on French administrative law, which the Tribunal held does not apply to "foreign public entities." (Award ¶ 259.) The Tribunal further rejected the Respondents' alternative defense that they should be entitled to a "grace period of two years" from the date of any adverse award in which to satisfy the award. (Award ¶¶ 283-296).

29.     According to the Tribunal, the Respondents' breach triggered "*ipso jure*" the payment mechanism provided for in Article 4.3 of the Memorandum of Understanding, that the Respondents were jointly responsible for this payment obligation, and that the only question to be decided was the amount of damages due to ENKA.  (Award ¶ 211.)

      **B.**      **ENKA'S TAX OBLIGATIONS UNDER THE MEMORANDUM OF UNDERSTANDING**

30.     ENKA sought clarification as to the scope of its tax obligations (if any) arising under the Memorandum of Understanding.  Article 4.5 of that agreement provides that the Respondents agree "to indemnify ENKA for any tax owed by ENKA in the Gabonese Republic which may arise from the Contracts and from this Memorandum of Understanding as defined in more detail in the Table below in the definition of Settlement Amount."  (Award ¶ 316.)  Although ENKA had been provided Certificates of Waiver for certain taxes owed to the Gabonese Republic, it argued that these Certificates were not sufficient because they did not cover all taxes potentially due.  (Award ¶ 302.)

31.     The Tribunal found that the language of Article 4.5 obligated the Gabonese Republic to indemnify ENKA "for any tax due by it in connection with the public contracts which had been awarded to it and subsequent transactions contained in the Memorandum of Understanding."  (Award ¶ 317.)  Consistent with this obligation, the Tribunal found that the Gabonese Republic had provided ENKA with Certificates of Waiver for certain taxes.  The Tribunal also found that ENKA had not shown that any other taxes were due, and thus, dismissed ENKA's claim for additional Certificates of Waiver.  (Award ¶¶ 324, 330.)  The Tribunal, however, warned that it "would be ill advised" for the Respondents "to apply, after notification of this award, any taxes or any other duties on periods prior to December 2015," as no mention of any such taxes was made during the arbitration.  (Award ¶ 332.)

### C.   SOCIAL SECURITY OBLIGATIONS DUE UNDER THE MEMORANDUM OF UNDERSTANDING

32.   On July 15, 2017 – after the Memorandum of Understanding was signed – ENKA received a formal notice stating that it owed certain amounts for "outstanding social security contributions from the 1st quarter 2014 to the 4th quarter 2016." (Award ¶ 334.) ENKA sought a ruling from the Tribunal that these taxes were inconsistent with the indemnification obligations provided for in Article 4.5 of the Memorandum of Understanding. (Award ¶ 335.)

33.   After conducting a detailed analysis of the parties' intent with respect to Article 4.5 of the Memorandum of Understanding and the nature of social security obligations in Gabon, the Tribunal determined that social security obligations fell within the scope of the indemnity provided by Gabon. (Award ¶ 367.) As such, the Tribunal held that "the Gabonese Republic shall indemnify" ENKA for social security contributions required by the government in relation to ENKA's work under the Construction Agreements. (Award ¶ 367.)

### D.   STEEL STRUCTURE COSTS

34.   In order to build the conference center required by the Construction Agreements, ENKA had to build a steel structure in Turkey, which would then be transported to Gabon for assembly. (Award ¶ 172.) Once the projects were terminated, the steel acquired for this structure was no longer needed. (Award ¶ 173.) ENKA incurred charges of €25,000 per month to warehouse the steel. (Award ¶ 431.)

35.   The Tribunal determined that the Respondents should take possession of the relevant steel within sixty (60) days of the date of the Award. (Award ¶ 388.) If the Respondents fail to do so, ENKA may dispose of the steel "in any way it deems appropriate" and without any risk of liability. (Award ¶ 390.) In addition, the Tribunal awarded ENKA damages

of €25,000 per month as from February 2018 through the date on which either the Respondents take full possession of the steel or ENKA disposes of it.  (Award ¶¶ 431, 477(h).)

36. All decisions by the Tribunal were unanimous.

## V. CONCLUSION

37. The Award that ENKA asks this Court to confirm was the product of unquestionably thorough arbitration proceedings in which the parties were given ample opportunity to plead their cases and present any and all evidence they thought to be relevant. The proceedings were overseen by highly experienced and distinguished arbitrators, who issued an award reflecting the highest levels of care and rigor.  The Tribunal's ultimate findings and rulings on the merits are amply supported by the record and were clearly set forth in an exhaustive 109-page final Award that meticulously detail the relevant facts, applicable law, and the Tribunal's reasoned analysis.  Arbitration awards are entitled to summary confirmation on a much lesser showing.  ENKA, therefore, requests that the Court confirm the Award.

38. ENKA should not have been required to submit this Petition.  As discussed above, the Respondents did not contest the jurisdiction of the arbitral tribunal, have not denied their contractual obligation to pay ENKA the sums due under the Memorandum of Understanding, and have acknowledged their duty to honor their debts to ENKA.  Despite this, ENKA is forced to spend substantial sums and draw on this Court's resources in order to force the Respondents to meet their obligations.  Courts in this District have held that a petitioner may recover reasonable attorneys' fees and costs "where the respondent unjustifiably refused to abide by the arbitral award." *Swiss Inst. of Bioinformatics v. Glob. Initiative on Sharing All Influenza Data*, 49 F. Supp. 3d 92, 98 (D.D.C 2014) (("'[I]t is well settled that the Court retains inherent power to assess attorneys' fees 'when a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons.'. . . [A]nd although this Circuit has not addressed the application of these principles in the context of foreign arbitral awards, a former member of this Court held 'that a party seeking to confirm a foreign arbitral award under the New York Convention may recover reasonable attorneys' fees and costs, at least where the respondent unjustifiably refused to abide by the arbitral award.'") (quoting *Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State*, 926 F. Supp. 2d 1, 1 (D.D.C. 2013)) (internal citations and quotations omitted)); *see also*, *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1104 (9th Cir. 2011) ("[A]n unjustified refusal to abide by an arbitrator's award, moreover, may equate an act taken in bad faith, vexatiously or for oppressive reasons.") (internal citation and quotations omitted); *cf. Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 359 (S.D.N.Y. 2014), *aff'd*, 619 F. App'x 37 (2d Cir. 2015). ENKA, therefore, requests that the Court order the Respondents to pay the reasonable attorneys' fees and costs it will incur in relation to this proceeding.

WHEREFORE, ENKA respectfully requests that this Court enter an order:

(i) Confirming in its entirety the Award, issued on September 14, 2018, attached as Exhibit A to the accompanying Declaration of Christopher Ryan;

(ii) Directing judgment to be entered thereon in favor of ENKA and against the Respondents in the amount of USD 46,912,875.86;

(iii) An award of post-judgment interest pursuant to 28 U.S.C. § 1961 or in accordance with the Award as applicable;

(iv) Awarding ENKA all reasonable attorneys' fees and costs incurred to bring this proceeding; and

(v) Granting such other and further relief as the Court may deem just and proper.

Dated:  October 25, 2018
        Washington, D.C.

SHEARMAN & STERLING LLP

 */s/ Christopher Ryan*
Jonathan Greenblatt (D.C. Bar No. 449874)
Christopher Ryan (D.C. Bar No. 476661)
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, D.C. 20004-2128
Telephone:  (202) 508-8000
Email:  jgreenblatt@shearman.com
        cryan@shearman.com