UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENKA INSAAT VE SANAYI A.S., <br>  Petitioner, <br> v. <br> THE GABONESE REPUBLIC AND L'AGENCE NATIONALE DES GRANDS TRAVAUX, <br>  Respondents. | Civil Action No. 18-cv-2458 (CKK) |

**MEMORANDUM OPINION**
(September 9, 2019)

The underlying suit arises from Petitioner Enka Insaat Ve Sanayi A.S.'s [1] Petition to Confirm [a Foreign] Arbitration Award in the approximate amount of $49,000,000.00 against Respondents the Gabonese Republic and L'Agence Nationale Des Grands Travaux, and the subsequent entry of a default against both Respondents.[1] The Gabonese Republic and L'Agence Nationale Des Grands Travaux move to vacate the Petitioner's default and in so doing, they request that this Court balance the following three factors: (1) whether the default as willful; (2) whether setting aside the default would prejudice the Petitioners; and (3) whether their alleged defenses are meritorious. These three factors will be addressed in turn in this Opinion.

**I. Background**

Petitioner Enka Insaat Ve Sanayi A.S. ("Enka" or "Petitioner") filed its Petition in this

---

[1] As of February 29, 2019, Petitioner reported that the Respondents had made two partial payments to Petitioner (1) $9,499,975.00 on February 7, 2019 and (2) $11,899,975.00 on February 20, 2019. Notice of Supplemental Development, ECF No. 27.

1

Court on October 25, 2018. Pursuant to two [12] Certificates of Clerk, the summons, complaint and related papers were sent by DHL to the Respondents on November 2, 2018. Petitioner filed [13, 14] Returns of Service/Affidavits on November 7, 2018, for Respondents The Gabonese Republic ("Gabon") and L'Agence Nationale Des Grands Travaux ("ANGT") (collectively, the "Respondents"). Petitioner's [13-1, 14-1] attached DHL receipts show a signature by "Service Courrier" as proof of delivery to the Ministry of Foreign Affairs in Gabon and a signature "Mouloungui" as proof of delivery to ANGT.

On January 10, 2019, Petitioner filed its [15] Motion for Entry of Default, noting that more than sixty (60) days had passed since the Defendants [Respondents] had been served and they had filed no answer or other responsive pleading. The Clerk of the Court entered a [16] Default against Defendants Gabonese Republic and L'Agence Nationale Des Grands Travaux on January 17, 2019. On January 22, 2019, Petitioner submitted [17, 18] Affidavits of Foreign Mailing regarding the entry of Default, and the following day, Petitioner filed its [19] Motion for a Default Judgment. On January 28, 2019, the Clerk's Office docketed its [20, 21] Certificates of Clerk acknowledging the mailing by DHL of a copy of the Request for Entry of Default, Affidavit, Default, Motion for Default Judgment with attachments, and a translation of these documents to the Defendants [Respondents]. On February 11, 2019, Petitioner filed its [22, 23] Certificates of Service with regard to the entry of default and motion for default judgment. On that same day, counsel for Respondents filed a [24] Notice of Appearance and a [26] Motion for Order to Respond by March 1, 2019 to the motion for entry of default and motion for default judgment (which had not yet been ruled upon by this Court). Respondents' request to respond by March 1, 2019 was granted by the Court, and on March 1, 2019, Respondents filed their [29] Motion to Vacate Entry of Default ("Mot. to Vacate"), which is the subject of this Memorandum

Opinion.

The Respondents' [29-1] Memorandum in support of their Motion to Vacate supplements their Motion to Vacate and also responds to the Petitioner's Motion for Default Judgment. Upon review of the docket in this case, the Court will address the Respondents' Motion to Vacate independently of the Petitioner's Motion for Default Judgment. Accordingly, this Memorandum Opinion shall not focus upon the ultimate merit of the legal defenses propounded by the Respondents (in response to the motion for default judgment) but rather upon whether the Respondents have met the standard for vacating the Petitioner's default. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court **GRANTS** Respondent's Motion [29] Motion to Vacate Entry of Default.

**II. Legal Standard**

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, a "court may set aside an entry of default for good cause." In demonstrating good cause, the party moving to set aside a default must "provide an explanation for the default of [ ] give reasons why vacation of the default

---

[2] The Court's consideration has focused on the following documents:

- Petition to Confirm Arbitration Award, ECF No. 1;
- Clerk's Entry of Default, ECF No. 16;
- Petitioner's Motion for Entry of Default Judgment, ECF No. 19;
- Respondents' Motion to Vacate Entry of Default, ECF No. 29, and Respondents' Memorandum in Response to Motion for Default Judgment and in Support of Motion to Vacate Entry of Default ("Mot. to Vacate"), ECF No. 29-1, with attachments;
- Petitioner's Memorandum of Law in Reply to Respondents' Opposition to the Motion for Default Judgment and in Response to Respondents' Motion to Vacate Entry of Default ("Opp'n to Mot. to Vacate"), ECF No. 31, with attachments;
- Respondents' Reply Memorandum in Support of Motion to Vacate Entry of Default ("Reply"), ECF No. 32.

entry would serve the interests of justice." *Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 129 (D.D.C. 2010).

The United States Court of Appeals for the D.C. Circuit ("the D.C. Circuit") has indicated that there is a presumption against default judgments in cases involving foreign sovereigns. *See, e.g., Practical Concepts, Inc. v. Republic of Bolivia*, 811 F. 2d 1543, 1551-52 (D.C. Cir. 1987) ("[I]t is in the interest of the United States' foreign policy to encourage foreign states to appear before our courts in cases brought under the FSIA.) "When a defendant foreign state has appeared and asserts legal defenses, albeit [even] after a default judgment has been entered, it is important that these defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Id.* at 1552; *see also Acee v. Republic of Iraq*, 658 F. Supp. 2d 124 (D.D.C. 2009) ("Default judgments are generally disfavored by courts perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing.") (internal quotation marks and citation omitted). "There is a strong presumption against the entry of a default judgment against a foreign state that has appeared in the case and expressed a desire to contest the claims," *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005), and a preference that a case proceed on the merits with parties participating in their own defense. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980); *Republic of Kazakhstan v. Stati,* 325 F.R.D. 507, 509 (D.D.C. 2018).

**III. Analyzing whether to Vacate the Default**

In determining whether or not to set aside a default, a court must consider: (1) the willfulness of the respondent's default, if any; (2) whether there is any prejudice to the petitioner; and (3) the merit of respondent's alleged defenses. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980); *Acee*, 658 F. Supp. 2d at 127 . With regard to the third

4

factor, a defense is considered meritorious if it contains "'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Acee*, 658 F. Supp. 2d at 129 (quoting *Keegel*, 627 F. 2d 372, 374 (D.C. Cir. 1980)). Each of these three factors will be addressed by this Court below.

### A. Was the Respondents' Default Willful?

The first factor for this Court's consideration is the willfulness of Respondents' default. In the instant case, the Respondents assert that their failure to respond to the Petition was not willful, but instead "resulted from bureaucratic challenges, and their limited familiarity with their obligations in tis foreign judicial proceedings." Mem. in Support of. Mot. to Vacate, ECF No. 29-1, at 16.[3] *See FG Hemisphere Assocs., LLC v. Democratic Republic of* Congo, 447 F. 3d 835, 841 (D.C. Cir. 2006) (instructing courts to consider "substantial political and institutional differences" between the United States and foreign countries when considering delays and/or failures to respond due to bureaucracy and procedural steps in the foreign countries); *see also Africa Growth Corp. v. Republic of Angola*, Civ. A. No. 17-2469 (BAH), 2018 WL 6329453, at *7 (D.D.C. Dec. 3, 2018) (setting aside an entry of default obtained against Angola even after finding that default was willful, in part because foreign sovereigns are entitled to a presumption against default).

Respondents explant that:

> The DHL mailings containing the papers relevant to this proceeding were delivered to, and signed for by, administrative building staff rather than personally delivered to the relevant recipients, were delivered along with other mail, and contained no indication that they related to court proceedings in the United States. . . . For this reason and also because of other bureaucracy, time passed before the relevant materials were recognized and transmitted to the appropriate person in charge of overseeing foreign legal actions. . . . Additionally, the Respondents had a limited understanding of the import of this foreign judicial proceeding and their potential obligations here. [ ].

---
[3] The Court cites to the page number assigned by the ECF system.

5

*Id.*[4]

When Respondents received notification of the default and the motion for default judgment, they engaged counsel and expeditiously filed a motion requesting time to respond to the motion for default judgment. Furthermore, Respondents subsequently made two payments in satisfaction of the underlying award.

Petitioner asserts that Respondents received all the papers served on them, and there is no challenge regarding the sufficiency of service. Opp'n to Mot. to Vacate, ECF No. 31, at 8. Petitioner disputes Respondents' "suggestion that they were not aware of these proceedings and did not understand the significance of the papers served on them[,]" because ENKA communicated with Respondents regarding its intent to pursue enforcement actions in the United States unless the award amount was paid. *Id.* at 9 (citing the Third Declaration of Christopher Ryan, counsel for ENKA, ECF 31-1.) Respondent contends however that, before proceeding in this Court, Petitioner made only a vague assertion regarding its pursuit of enforcement of the award in "multiple jurisdictions, including the United States and certain countries in Europe." Reply, ECF No. 32, at 9 (citing an attachment to the Christopher Ryan Declaration). Furthermore, "none of the purported communications [by ENKA's representatives] were with the Minister of Foreign Affairs of Gabon . . . or with the State Judicial Agency . . . " Reply, ECF No. 32, at 10.

Petitioner argues further that because Gabon has been a party to four litigations in the United States, it should be aware of the "potential import of and its potential obligations with respect to lawsuits brought in the United States." Opp'n to Mot. to Vacate, ECF No. 31, at 10; *see*

---

[4] Petitioner notes that the papers served on Gabon were *addressed* to the Minister of Foreign Affairs. Opp'n, ECF No. 31, at 9.

*Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 156-58 (D.D.C. 2016) (where the court rejected Sudan's argument that it "lacked an understanding of the United States litigation process and the gravity of the consequences that might follow from its failure to appear" because Sudan had been involved in several prior similar litigations in the United States and was familiar with the U.S. legal system).[5]  Respondents note however that ANGT was not a party to any of the four litigations and Gabon made no appearance in three of the four.  The fourth case was from "nearly a decade ago, was filed in a different district, and the only issue was whether service was proper." Reply, ECF No. 32, at 11.

    Petitioner's argument regarding Respondents' familiarity with the obligations of the legal system misses the point insofar as Respondents *did* act quickly once they became aware of the default and outstanding motion for default judgment.  Respondents retained counsel and filed a motion requesting time to respond to both and subsequently filed the instant Motion to Vacate the Default.  Moreover, the *Flanagan* case can be distinguished because that case involved a four year delay in Sudan's defense of the case and the court contrasted that lengthy and inexcusable delay with delays in other cases in which defaults were set aside.  *See Flanagan*, 190 F. Supp. 3d at 156-57, citing *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 108-09 (D.D.C. 2009) (setting aside a willful default where defendants filed a motion to vacate the default six months after it was entered); *Biton v. Palestinian Interim Self Gov't Auth.*, 233 F. Supp. 2d 31, 32-33 (D.D.C. 2002) (finding that a default was not willful where defendants filed a motion for set aside shortly after entry of default).

---

[5] In *Flanagan*, the court determined that Sudan's default was willful and that plaintiffs would be severely prejudiced by a set-aside.  That court vacated the part of the default judgment dealing with punitive damages but upheld the rest.

In the instant case, the manner in which the papers served by Petitioner were processed internally by Respondents may have involved a combination of miscommunication, delay and a failure to exercise due diligence, but a willful default requires more than negligent conduct. *Republic of Kazakhstan*, 325 F.R.D. at 509. To show willfulness, a moving party need not establish bad faith, through it must demonstrate more than mere negligence." *Gray v. Staley*, 310 F.R.D. 32, 35 (D.D.C. 2015)   Accordingly, in light of the circumstances in this case as well as the presumption against default in cases involving foreign sovereigns, the Court finds that Petitioner has not demonstrated that Respondents' default was willful.

### B. Possible Prejudice to the Petitioner

The second factor for this Court's consideration is whether the Petitioner will be prejudiced in the event the default is vacated. Respondents assert that Petitioner will face no prejudice if the default is vacated because: (1) Petitioner has received substantial payments in connection with the award; (2) Petitioner does not seek injunctive or other emergency relief; and (3) there will be no material delay of the resolution of this matter as there were no scheduled hearings. Memo. in Support of Mot. to Vacate, ECF No. 29-1, at 17. Petitioner does not respond to Respondents' statement nor does it claim that it will suffer any prejudice if the default is vacated. Accordingly, the Court finds on this record that Petitioner will not be prejudiced by vacating the default.

### C. Respondents' Potentially Meritorious Defenses

The third factor for this Court's consideration is whether Respondents' defenses are meritorious. "Meritorious" in this context does not mean "likelihood of success," *see Keegel*, 627 F.2d at 374, but rather, defenses are meritorious for purpose of setting aside a default "if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Keegel,* 627 F.2d at 374 (quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 *5th Cir. 1969); *see*

*also Whelan v. Abell*, 48 F.2d 1247, 1259 (D.C. Cir. 1995) (When seeking a set-aside of an entry of default, a party is "not required to prove a defense, but only to assert a defense that it may prove at trial." )

Respondents have identified several potentially meritorious defenses, including lack of personal jurisdiction over Respondent ANGT, which they allege to result in this Court being unable to issue a judgment pursuant to Fed. R. Civ. P. 19 (indispensable party); lack of subject matter jurisdiction; no personal jurisdiction over Gabon; and possible *forum non conveniens.* When moving to vacate an entry of default, the movant is not required to prove a defense, but only to assert a defense that it may prove at trial." *Id.* A likelihood of success is not the measure for determining whether a defense is meritorious. *Biton v. Palestinian Interim Self Government Auth.*, 233 F. Supp. 2d 31, 33 (D.D.C. 2002) (internal quotation marks and citation omitted). Because Petitioner's responses to Respondent's proposed defenses make it clear that at least some of the defenses asserted by Respondents require consideration on the merits by this Court, this Court finds that Respondents' defenses satisfy the standard for merit.

## IV. Conclusion

This Court concludes that the default by Respondents Gabon and ANGT was not demonstrably willful; vacating the entry of default will not prejudice the Petitioner's claim; and furthermore, Respondents have raised meritorious defenses to the Petitioner's claims, which should be addressed on their merits. Accordingly, the Court shall GRANT the Respondents' [29] Motion to Vacate the Default. A separate Order will accompany this Memorandum Opinion.

DATED: September 9, 2019          _____/s/_____
                                  COLLEEN KOLLAR-KOTELLY
                                  UNITED STATES DISTRICT JUDGE